UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CR. NO. 25-021 (GMM) |
| DANIELLE BERTOTHY, Defendant. | |

**MOTION REGARDING PRETRIAL DETENTION**

The United States of America, by and through the undersigned attorneys, moves the Court to order defendant detained pending trial based on danger to the community and risk of flight pursuant to 18 U.S.C. § 3142.

Defendant is charged with arson, in violation of 18 U.S.C. § 844(i).  This offense qualifies as a crime of violence under the Bail Reform Act. Pretrial detention is appropriate here because the Defendant poured gasoline and set fire to a bar, store, restaurant, and hotel with approximately 20 guests the day after New Years, endangering the lives of numerous people before fleeing the District of Puerto Rico. Under 18 U.S.C. § 3142(g), numerous factors favor detention, including the nature and circumstances of the offense charged, the weight of the evidence (which includes videos of Defendant with a gas container at the bar shortly before the fire and walking towards the fire where she remains until the fire is lit), and danger to the community. Moreover, this case involves a serious risk that Defendant will flee, particularly given that she faces a criminal charge with a mandatory minimum of 5 years in prison and

a maximum of 20 years and that she left Puerto Rico shortly after the fire (abandoning her Airbnb more than a week prior the end of her reservation). The Government therefore seeks pretrial detention pursuant to 18 U.S.C. § 3142(f)(2)(A).

## I.   Basis for Detention

a. The United States requests detention pending trial under 18 U.S.C. § 3142(e) because there is no combination of conditions that will reasonably assure the following:

   i. ☒ Defendant's appearance, based on a preponderance of the evidence,[1] and/or

   ii. ☒ Safety of any other person and the community, based on clear and convincing evidence.[2] [18 U.S.C. § 3142(f)]

b. The following factors under 18 U.S.C. § 3142(g) favor detention:

   i. ☒ the nature and circumstances of the offense charged [18 U.S.C. § 3142(g)(1)],

   ii. ☒ the weight of the evidence against the defendant [18 U.S.C. § 3142(g)(2)],

   iii. ☒ the history and characteristics of the person [18 U.S.C. § 3142(g)(3)], and/or

   iv. ☒ the nature and seriousness of the danger to any person or the community that would be posed by the person's release [18 U.S.C. § 3142(g)(4)]

## II.   Detention Hearing

A detention hearing is warranted because the case involves the following:

---

[1] *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991).

[2] The "Court may consider uncharged conduct in assessing the degree of danger posed by the defendant." *United States v. Rivera-Sepúlveda,* Criminal No. 19-695, 2020 WL 402277, at *2 (D.P.R. 2020). "[D]anger to the community does not refer only to the risk of physical violence." *Patriarca*, 948 F.2d at 792 n.2. The Court should consider any evidence of dangerousness, even if unrelated to the pending charges. *United States v. Rodriguez,* 950 F.2d 85, 88 (2d Cir. 1991).

a. ☐ Firearm, explosive, destructive device, or any other dangerous weapon [18 U.S.C. § 3142(f)(1)(E)],

b. ☒ Crime of violence [18 U.S.C. § 3142(f)(1)(A)],

c. ☐ Offense with a maximum sentence of life imprisonment or death [18 U.S.C. § 3142(f)(1)(B)],

d. ☐ Controlled-substance offense with a maximum sentence of imprisonment of 10 years or more [18 U.S.C. § 3142(f)(1)(C)],

e. ☐ Any felony, provided that the defendant has two prior convictions for any of the following: (i) a crime of violence, (ii) a controlled-substance offense with a maximum sentence of imprisonment of 10 years or more, or (iii) an offense with a maximum sentence of life in prison or death [18 U.S.C. § 3142(f)(1)(D)],

f. ☐ Minor victim or a failure to register as a sex offender under 18 U.S.C. § 2250 [18 U.S.C. § 3142(f)(1)(E)],

g. ☒ Serious risk of flight [18 U.S.C. § 3142(f)(2)(A)], and/or

h. ☐ Serious risk of obstructing justice or intimidating a witness/juror [18 U.S.C. § 3142(f)(2)(B)]

The United States respectfully reserves its right to amend the selections listed above, and nothing in this filing shall constitute a waiver of any argument related to detention.

## DISCUSSION

## I.    The Offense Conduct

On January 2, 2025, at approximately 12:40 a.m., multiple 911 callers began reporting a fire at road 3301 KM 2.9 Combate Beach in Cabo Rojo, Puerto Rico. The fire was located at Luichy's Hotel and Restaurant. It was later learned that the fire started at the business called Bar Marea (which is part of the same structure), then spread to the business called Artesanias Juavia, and then to Marinera Restaurant and

Luichy's Hotel. Luichy's Hotel at the time had all of its 15 rooms occupied (with over 20 guests). Everyone was evacuated without the loss of lives. However, the fire destroyed the entire building with its four businesses. Relevant locations are illustrated below.



The fire grew and spread taking out all four adjacent businesses as illustrated below.

Before:



After:



Investigators later learned that hours before the fire, on January 1, 2025, at approximately 8:30pm, the Defendant arrived at Bar Marea. According to witness statements, she seemed to have already been under the influence of alcohol. Once at Bar Marea the Defendant ordered a few drinks and began acting belligerent and argumentative. The owners asked her to leave but she refused. A call was made to authorities and Municipal Police Officers arrived soon thereafter and escorted the Defendant to her Airbnb across the street from the bar. About 20 minutes later,

Defendant returned to Bar Marea as the staff were closing for the night. This time Defendant acted more aggressively, so the police was again called. She eventually left by herself. At that time, Defendant was wearing black leggings, an orange top, and a white and black or navy cap.

The investigation corroborated that the guest staying at the Airbnb was Defendant, Danielle Bertothy. She had reserved the location from December 30, 2024 until January 11, 2025.

From a review of security cameras in the area, investigators observed—shortly before the fire—a female wearing a black dress carrying a red container that is mandated by Puerto Rico law to be used by individual citizens when obtaining gasoline.



On surveillance videos, an individual was observed to be engaging in conduct consistent with pouring a liquid at Bar Marea at approximately 12:25am when it was closed. A fire is observed to start next to the person who appeared to be pouring the

liquid. The person then quickly leaves Bar Marea. Neither the face nor the clothing of that individual is clear from the videos in which the liquid is poured, and the fire begins.



After the fire, a person consistent with the appearance of Defendant immediately walks around Marinera restaurant and back in the direction to her Airbnb.





Soon after, Bar Marea is engulfed in flames. The fire would then spread to the adjoining businesses.



The owners of Bar Marea and an employee (among other witnesses) identified the person seen carrying the red container in the video as the individual who was removed from Bar Marea prior to the fire.

ATF interviewed the host of the Airbnb where the Defendant stayed, who indicated that she provided Defendant with a generator that was full of gas and an additional full gas tank due to the island-wide blackout of December 31, 2024. The host identified the red gas can in the footage as having the same characteristics as the one she gave to Defendant and identified the person seen on the footage as Defendant.

Below are side by side photographs showing the person carrying the gas tank and Defendant:

  

**Left**: Defendant as seen on video
**Middle**: Defendant at Bar Marea
**Right**: Defendant interviewed by St. Luis PD, Jan 3, 2025

At around 9:37am, the following morning, Defendant asked a friend in Puerto Rico to coordinate for someone to pick her up and take her to the airport that same day. Defendant's decision to leave shortly after the fire appears to have been impromptu. As previously mentioned, Defendant booked her Airbnb from December 31, 2024, until January 11, 2025. In addition, prior to that morning, Defendant (who did not have a car) had not made any plans for transportation to the airport (which is a 3-hour drive away from the Airbnb).

Around 11:00am on January 2, 2025, a driver picked up Bertothy to take her to the airport. On the way to the airport, at around 11:28am, Bertothy asked to stop at a

Subway restaurant in Cabo Rojo. There, Bertothy is seen wearing shoes like the ones on the security footage.






**Left**: Suspect as seen on video
**Right**: Bertothy at Subway the morning of Jan 2, 2025

Bertothy was taken to the San Juan airport and boarded Southwest Airline Flight WN3861. She later connected to St. Louis, Missouri (STL) arriving on January 3, 2025.

On January 3, 2025, Saint Peters Police Department interviewed Defendant, who stated that she had been in Puerto and did some things that were out of character for her. Defendant did not elaborate on what she did that was out of character. She did confirm that she was at the bar "where they are claiming something happened". She further stated she did not know whether there was an actual fire there even though she was staying very close to the bar.

On January 7, 2025, a federal search warrant was executed at Defendant's residence in Saint Peters. When ATF arrived and announced that they had a federal search warrant, Defendant started to hyperventilate and cry. She immediately mentioned (without prompting) that she had not yet unpacked from Puerto Rico.



Defendant also disclosed that there was cocaine in the house.

During the search, multiple clothing items were recovered consistent with the clothing that Defendant was wearing at Bar Marea: an orange top, white and navy-blue trucker cap, and black sandals. Agents also seized a short black dress consistent with the one worn by the arsonist on video. A K9 marked this dress positive for accelerant, and it is pending further analysis. In addition to these items, Bertothy was in possession of cocaine and a pink revolver at her residence. Agents noted multiple empty boxes of wine and empty beer cans.

## II.    <u>Arson is a Crime of Violence</u>

Defendant is charged with arson, in violation of 18 U.S.C. § § 844(i). As used in section 3142, the term "crime of violence" means—

> (A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another;
> (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense; or
> (C) any felony under chapter 77, 109A, 110, or 117.

18 U.S.C. § 3156(a)(4) (emphasis added).

As numerous courts have held, arson is crime of violence. *See, e.g., United States v. Mitchell*, 23 F.3d 1, 2 (1st Cir. 1994) (hold that arson, as well as aiding and abetting arson, are crimes of violence under Bail Reform Act); *United States v. Walker,* No. 23-CR-141-JFH, 2023 WL 3197712, at *2 (N.D. Okla. May 2, 2023) (concluding that arson is a crime of violence under the Bail Reform Act); *United States v. Marzullo*, 780

F. Supp. 658, 662–65 (W.D. Mo. 1991) (finding arson to be an offense that "by its nature involves a substantial risk that physical force against the person or property of another would be used"); *United States v. Shaker*, 665 F. Supp. 698, 702 n. 4 (N.D. Ind. 1987) (same).

### III.    Danger to the Community

Through her actions, the defendant has shown a complete disregard for the safety of the community. While the waitress at Bar Marea was serving her and attempting to manage Defendant's increasingly aggressive behavior, Defendant stated "that is why Puerto Ricans are the way they are."  Her belligerent behavior soon escalated.

After going to a bar, acting aggressive towards others, including the staff, and being twice kicked out, she concocted a plan to burn down the bar. She stayed at her Airbnb for a few hours, enough time to change her clothes and think things through. The result was that hours after she had last been at the bar, she grabbed the gas canister accessible to her and went across the street to Bar Marea. She poured gasoline all over the bar, which was a wooden structure, lighting it on fire.  It seems that, at no point during the hours she spent in her Airbnb, did Defendant stop to think of the damages and the risk of life that her actions would cause. Her malice goes even further, after igniting the fire and leaving the gas can, she came back out to take a second look at her handywork. This was yet another opportunity for her to stop herself. At this point the fire had grown but it had not spread to the other businesses. She could have called

911 to stop further damages but she did not. She simply went back to her Airbnb and did nothing about it.

Defendant's actions endangered multiple human lives. Although all persons were promptly evacuated, her actions took out four businesses that were left inoperable and multiple employees have been left without a job in the new year. A whole community was scarred by her actions.

It is true that Defendant does not have convictions for prior acts of violence. But her lack of a criminal history combined with the egregious act of violence for which she is charged makes her more of—not less of—a danger to the community. Her violent behavior is erratic. She is too old to characterize the arson as a youthful indiscretion. She had too much time to reflect before setting the fire (and, afterwards, as she watched the fire consume the building) to dismiss this as a momentary lapse of judgment. That Defendant's arson did not kill hotel guests celebrating the new year was the result of skilled firefighters and luck. Releasing Defendant on bail is tantamount to playing a game of Russian roulette, hoping against the weight of the evidence that Defendant will not have another violent explosion that endangers the lives of others.

**IV.      Risk of flight**

Based on her Airbnb reservation, Defendant planned to be in Puerto Rico from December 30, 2024, to January 11, 2025. However, she left January 2, 2025, in an impromptu manner, the morning of the fire. Instead of facing her actions and turning

herself in or even reporting the fire, she fled. There was no self-reflection, no remorse, only the sense of self preservation and not getting caught.

Defendant knew exactly what she was doing the morning of January 2, 2025. After endangering the lives and livelihood of several businesses, hotel guests and the neighboring community, she saw a window of escape and took it, quickly getting on a flight to avoid capture. These actions show her intent to avoid justice. Boarding that flight was probably a relief, thinking she would leave Puerto Rico as another anonymous tourist, not facing the consequences of her crimes.

Although Defendant has remained in Missouri since her act of violence in Puerto Rico, that was before she was faced with a criminal charge that carries a prison sentence between five and twenty years. Moreover, that was before she realized that what happened in Puerto Rico would not stay in Puerto Rico—it will follow her throughout the United States.

**WHEREFORE,** the United States very respectfully requests that the defendant remain detained pending trial.

**RESPECTFULLY SUBMITTED**,

In San Juan, PR, on January 16, 2025.

W. Stephen Muldrow
United States Attorney

*/S/ Corinne Cordero-Romo*
Corinne Cordero-Romo
USDC # 231111
Assistant United States Attorney

15

United States Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Street
San Juan, Puerto Rico 00918
Email: corinne.cordero@usdoj.gov
Tel. (787) 766-5656
Fax: (787) 766-5398

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which will send notification

of such filing to all attorneys of record.

*s/Corinne Cordero-Romo*
Corinne Cordero-Romo
Assistant United States Attorney
USDC No. 231111