IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>  Plaintiffs<br><br>                Vs.<br><br>DANIELLE BERTOTHY<br>Defendant | CRIM. NO. 25-21 (GMM) |

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant Danielle Bertothy ("Bertothy"), by and through undersigned counsel, respectfully submits this memorandum to assist this Court in fashioning a sentence that is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). Jointly with the United States, Bertothy respectfully requests a sentence of five years' imprisonment, an order of restitution as mandated by statute with no additional fine, and an appropriate term of supervised release.

At 37 years of age, Bertothy stands before this Court for the only criminal conviction of her life. She has fully accepted responsibility for her conduct, is profoundly remorseful, and is ready to work tirelessly to do everything within her ability to make this right. As this Court crafts the appropriate sentence in this case, it is Bertothy's lifetime of struggles and experiences that far outweigh the single misstep that brings her before this Court.

Bertothy's father left their family when she was just 11 years old. Given his absence, Bertothy's mother had to work long hours to support her and her three sisters. The children were alone most of the time and Bertothy's childhood was confusing and chaotic. As Bertothy's mother

struggled to make ends meet, the family was forced to move frequently. By the age of 17, Bertothy was working and living on her own.

What stands out about Bertothy against this backdrop is that, as an adult, she has always worked hard, maintained gainful employment, and up until this case, led an entirely law-abiding life.

Unfortunately, Bertothy has also been the victim of sustained abuse. A longtime boyfriend emotionally and physically abused her throughout their 7-year relationship. Thankfully, Bertothy had the courage to end that relationship and, until the time of her arrest for the instant offense, was working hard for a marketing company while living in the greater St. Louis, Missouri community. In her free time, Bertothy generously volunteered her time and money to caring for abused animals. Upon completion of any sentence imposed by this Court, Bertothy hopes to start a family and to work hard to earn enough money to repay the victims of the crime that brings her before this Court.

Bertothy has struggled her entire adult life with drug and alcohol abuse. By the age of 19, Bertothy was regularly abusing alcohol and cocaine and began using ecstasy in her early 20s. She is motivated to achieve full sobriety, has already taken advantage of resources to accomplish that goal while in pretrial detention in this case, and is an exemplary candidate for participation in the Residential Drug Abuse Program (RDAP) while serving her custodial sentence.

Since her arrest in January 2025, Bertothy has remained in federal custody and has no disciplinary record. Indeed, while in custody, Bertothy has voluntarily participated in mental health treatment and was diagnosed with anxiety and depression for which she is prescribed appropriate medications. Moreover, she is actively participating in substance abuse treatment at the United States Bureau of Prisons facility where she is detained and she is enthusiastically partaking in numerous courses to further her education, to help others, and to put herself in a position to succeed

upon release from incarceration. These have included, but are not limited to, programs the U.S. Department of Justice characterizes as "Evidence-Based Recidivism Reduction (EBRR) Programs." *See, e.g.,* Exhibit 1 (Certificate of completion awarded to Bertothy on August 21, 2025). In addition, Bertothy—literally an ocean away from home—has begun to learn to communicate more meaningfully in Spanish, participated in a special project to make blankets and beanies for a children's oncology ward, and found solace in religion for the first time since childhood.

Unfortunately, one of the toughest realities to accept at any age is that, as humans, we cannot go back in time to make better decisions. We have to accept the decisions we make and the consequences of those decisions. But if ever there were a defendant standing before this Court who is as remorseful as she is committed to never finding herself anywhere close to this situation again, it is Bertothy.

As Congress and the Supreme Court acknowledge, this Court is charged with the responsibility of evaluating Bertothy as an individual in crafting an appropriate sentence that is particularly tailored to her. *See Koon v. United States*, 518 U.S. 81, 113 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue"); *see also* 18 U.S.C. § 3553(a)(1) ("The court…shall consider…the history and characteristics of the defendant").

I.  **Procedural Background**

On January 16, 2025, Bertothy was charged in a one count indictment alleging that she maliciously damaged and destroyed, by means of fire, a building and other real and personal

property in violation of 18 U.S.C. § 844(i). (Doc. 3). That same day, Bertothy was arrested and has remained in federal custody throughout the duration of this case. Bertothy's behavior while in custody has been exemplary.

On July 22, 2025, Bertothy pleaded guilty to the sole count of the indictment pursuant to a written plea agreement with the Government in which the parties agreed to jointly recommend a sentence of five years' imprisonment. (Doc. 52). On September 12, 2025, the United States Probation Office prepared a preliminary Presentence Investigation Report ("PSR"). (Doc. 53). Consistent with this Court's local rules, Bertothy formally requested informal changes and additions to the disclosure PSR and the Probation Office has agreed to revise the PSR accordingly. Sentencing is scheduled for October 20, 2025. (Doc. 52).

## II.    Legal Standard

As this Court is aware, Congress has mandated that the sentence imposed in this case be "sufficient, but not greater than necessary" to achieve the objectives of punishment. 18 U.S.C. § 3553(a).

As the United States Court of Appeals for the First Circuit has established, the methodology this Court should follow post-*Booker* is the following:

> Although the guidelines have become advisory rather than mandatory, determining the correct [guideline sentencing range] remains an appropriate starting point for constructing a defendant's sentence. Once the sentencing court has established the [guideline sentencing range] (including a consideration of any applicable departures), it must then evaluate the sentencing factors set out in 18 U.S.C. § 3553(a), along with any other relevant considerations. Finally, it must determine, in light of that assessment, whether a sentence above, within, or below the [guideline sentencing range] is warranted. The goal is to fashion "a sentence sufficient, but not greater than necessary," for the achievement of the legitimate objectives of sentencing.

*United States v. Dixon*, 449 F.3d 194, 203–04 (1st Cir. 2006) (internal citations and footnote omitted).

### III. Advisory Sentencing Guidelines

The PSR correctly computes the total offense level in this case—after acknowledging Bertothy's full acceptance of responsibility—as 21 (Doc. 53 at ¶ 45) and Bertothy's criminal history category as I (*Id.* at ¶ 50). The PSR also correctly concludes that an offense level of 21 combined with a criminal history category of I results in an advisory guideline sentencing range of 37 to 46 months. (*Id.* at ¶ 85). However, the PSR also accurately notes that, because the statutory minimum for the offense of conviction is 60 months—14 months higher than the high end of the advisory Guidelines range—the advisory Guidelines term of imprisonment is the mandatory minimum sentence of 60 months. (*Id.*).

The PSR also appropriately notes that Bertothy does not have the financial ability to pay a fine in this case. (*Id.* at ¶ 83).

### IV. Relevant 3553(a) Factors

As a matter of law, this Court must make an individual assessment of the 18 U.S.C. § 3553(a) factors based on all the facts presented. *Gall v. United States*, 552 U.S. 38, 50 (2007). Section 3553(a) sets forth a general directive to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. Section 3553(a) then lists numerous factors that a sentencing court must consider. Especially relevant to this case, and supportive of the parties' joint request for a sentence of 60 months' imprisonment, are the following factors:

#### A. The History and Characteristics of the Defendant – 18 U.S.C. § 3553(a)(1)

Bertothy is a 37-year-old woman facing sentencing for the only crime she has ever committed. She has three caring sisters and a mother who are fully committed to supporting her upon her release so that she can get back on her feet and begin working to pay back the people hurt by her offense. One of her sisters, Jessica, is ready to welcome Bertothy into her home in

Connecticut when released from custody to ensure she has the emotional and financial support to succeed while on supervised release. She expressed this commitment in a similar context when she testified under oath in a detention hearing in the United States District Court for the Eastern District of Missouri and committed herself to undertaking similar responsibilities in the context of pretrial release.

Despite a profoundly difficult childhood, struggles with substance abuse, and an abusive long-term relationship, Bertothy has managed to maintain gainful employment and volunteer her time to help animals. Her family has always thought of her as a person who supports others—and what she has fully accepted responsibility for in this case is inconsistent with her general character.

In a letter being submitted for this Court's consideration, her mother provides numerous examples of instances in which Bertothy demonstrated that she is "someone who gives freely and looks for ways to make life better for others." *See* Sentencing Letters (Exhibit 2). In another letter, her sister's significant other notes, "she has a kind heart, a selfless spirit, and a deep sense of responsibility for those she loves." *Id*. And her sister explains, "Danielle has always been the type of person who steps up when someone is in need. She is generous to a fault, willing to offer her time, resources, or even the shirt off her back if it might help someone else. Her compassion and empathy for others are genuine and deeply rooted in who she is. Even during her own difficult times, Danielle has consistently shown concern for those around her, offering support and care when others might have turned inward. That selflessness is one of the qualities I admire most about her." *Id*. And her close friend notes, "she has always made herself available to others, putting their needs before her own without ever expecting anything in return…Her generosity truly comes through in small, everyday acts of kindness as well as the big moments when people needed her most. She gives freely of her time, her heart, and her support freely." *Id*.

These sentiments are corroborated by her otherwise complete lack of criminal history and by the decisions she has made in pretrial custody to better herself and to help others. As this Court is well aware, that is not the case with many defendants, especially defendants who are far from home and separated to such an extent from her family that regular visitation is a practical impossibility. To that end, the time behind bars has been profoundly difficult but as a testament to her character, Bertothy has taken this as an opportunity to make the right decisions. Importantly, her family recognizes her for who she truly is: a good person for whom a single, isolated incident will forever define her life regardless of the sentence this Court imposes. Indeed, the natural consequence that will flow from this crime is that she will forever live with it and her reputation will forever be tarnished by it—and that is itself a lifelong sentence. That is why it is so important for this Court to know that her family is counting the days until she comes home because she does have a support structure that will help her transition back into the community.

Perhaps unsurprisingly, given her life story, Bertothy has struggled with issues related to her mental health. Bertothy has been diagnosed with depression and anxiety and is working hard to gain control over these issues. Bertothy is under the care of a mental health professional at the Bureau of Prisons facility where she is detained whom she sees at least twice per month for these struggles and the treatment is helping her to overcome these hurdles—and she is committed to follow-up treatment in the community when released from custody. Courts have long recognized mental health as a ground for a reduced sentence. *See, e.g., United States v. Ferguson*, 942 F. Supp. 2d 1186, 1194 (M.D. Ala. 2013); *United States v. Flowers*, 946 F. Supp. 2d 1295, 1300 (M.D. Ala. 2013); *United States v. Robinson*, 778 F.3d 515, 523 (6th Cir. 2015) (citing *Gall*, 552 U.S. at 50) ("Defendant's contentions regarding mental illness, if credible, could qualify as a compelling justification that may support a significant downward variance from the Guidelines range").

In a similar vein, Bertothy has worked hard to achieve sobriety and is participating in substance abuse treatment while in federal custody. She would welcome the opportunity to continue that work in RDAP during her incarceration and requests a recommendation that the Bureau of Prisons designate her at a facility with RDAP and mental health treatment resources.

Additionally, Bertothy has used her time in pretrial detention to help others—both inmates also detained at the facility and the community outside the facility. This is consistent with acts of benevolence and volunteerism throughout her life. Federal courts routinely recognize a defendant's volunteerism, charity, and benevolence as warranting a reduced sentence. *See, e.g., United States v. Rioux*, 97 F.3d 648, 663 (2d Cir. 1996) ("While many of Rioux's public acts of charity are not worthy of commendation, he unquestionably has participated to a large degree in legitimate fund raising efforts. Of particular moment are Rioux's efforts to raise money for the Kidney Foundation. It was not an abuse of discretion for the district court to conclude that, in combination, Rioux's medical condition and charitable and civic good deeds warranted a downward departure"); *United States v. Sarlo*, 269 F. App'x 30, 31 (2d Cir. 2008) ("In explaining his sentence, Judge Casey stated that he had considered all of the § 3553(a) factors in reaching his decision to impose a below-Guidelines sentence. He noted Sarlo's age, health problems, charitable acts and involvement with her church"). Perhaps most notably, the United States Court of Appeals for the Seventh Circuit affirmed the probation sentence H. Ty Warner, the billionaire creator of Beanie Babies, received for evading $5.6 million in federal taxes by hiding assets in a Swiss bank account. *See United States v. Warner*, 792 F.3d 847, 850 (7th Cir. 2015). The sentencing court acknowledged Warner's "private acts of kindness, generosity and benevolence" and emphasized that "many of them took place long before Warner knew he was under investigation." *Id*. at 854. Bertothy's life—as evidenced by acts taken long before this incident and continuing even while

detained pending resolution of this case—is one of genuine and sincere kindness, generosity and benevolence. And Bertothy's charitable acts are of the most commendable kind: hands-on volunteerism that literally touches the lives of those around her.

To be clear, Bertothy has admitted guilt in this case and has fully accepted responsibility. She is extremely sorry for what she has done. There is not a moment that goes by in which she does not feel extreme remorse and would give anything to go back in time—but life does not work that way. She accepts that she will live with the consequences of her conduct for the rest of her life and has no choice but to focus on doing everything she can to give back to the community in the future. To that end, Bertothy is committed to abiding by the law, working hard to earn money to repay the people hurt by her actions, and contributing to her community. Bertothy's history and characteristics and the path she is charting for herself make clear that the jointly requested sentence of 60 months is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a).

B. The Need for the Sentence Imposed – 18 U.S.C. § 3553(a)(2)

Bertothy accepts full responsibility for her crime and accepts that it is serious. She is profoundly grateful that no one was physically hurt as a result of her actions. However, she acknowledges that the event was extremely traumatic and frightening to all involved—and that it could have been worse.

As the parties jointly agree, a sentence of 60 months' imprisonment accomplishes the aims of Section 3553(a)(2) as it reflects the seriousness of the offense, promotes deterrence, protects the public, and provides Bertothy with needed treatment. Indeed, it is far in excess of what the advisory Sentencing Guidelines range would be without a mandatory minimum. In other words, the jointly recommended sentence is no slap on the wrist by any objective measure. In stark contrast, the mandatory minimum, and the fact that it is higher than what the advisory Guidelines range would

otherwise be, accounts for any aggravating factors and appropriately takes into account the mitigating factors present in this case.

As demonstrated by her complete lack of criminal history and unblemished performance while in custody, it is clear that Bertothy will never commit another crime. Bertothy has already suffered greatly as a result of her actions, and the shame and humiliation this criminal case has brought has been difficult for her to bear. She is a good person, and she will not recidivate.

C. <u>The Need to Provide Restitution – 18 U.S.C. § 3553(a)(7)</u>

Section 3553(a)(7) directs this Court to consider "the need to provide restitution to any victims of the offense." In her plea agreement, Bertothy agreed to pay restitution to the extent ordered by this Court and is fully committed to a restitution order that is appropriate as a matter of law. A sentence of 60 months' imprisonment will allow Bertothy to work to pay restitution at the earliest possible moment—which would help the victims of her offense ultimately be made whole as much as money can accomplish that task. Any sentence in excess of the statutory minimum would unnecessarily delay her ability to begin making payments of restitution. Instead, placing Bertothy in supervised release as soon as the law allows would enable her to go back to work—as she has always done throughout her adult life—so that she can make restitution payments.

D. <u>The Need to Avoid Unwarranted Sentence Disparities – 18 U.S.C. § 3553(a)(6)</u>

A sentence of 60 months in this case would satisfy Congress' mandate that sentencing courts should aspire to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(7). Sentences on a national level, based on data published by the United States Sentencing Commission, for arson offenses in 2024 were a median of 60 months, the sentence requested in this case. Further, in all cases nationally in 2024, almost 30% of defendants received a downward variance resulting in a

below-Guidelines sentence. More specifically to this judicial district, over 38% of defendants received a downward variance.

On a national level, the sentence jointly recommended here is the norm, not the exception, even based on similar cases adjudicated over the last several months. For example, in July 2025, a defendant in the United States District Court for the Western District of Tennessee received a 60-month sentence after pleading guilty to arson. Based on the allegations in that case, the defendant committed multiple acts of arson on multiple dates. *See United States v. Sniezak*, Case No. 2:24-CR-20166-MSN-1 (Docs. 42 and 43). That same month, a defendant in the United States District Court for the Western District of New York received a 60-month sentence after pleading guilty to arson. Based on the allegations in that case, this too involved multiple acts of arson on multiple dates. *See United States v. Jermaine Fields*, Case No. 6:25-CR-06008-CJS (Doc. 55). And in the United States District Court for the Southern District of Alabama, a defendant received a 60-month sentence after intentionally setting a fire inside of a downtown market with employees and customers inside. *See United States v. Timothy Jones*, Case No. 1:24-CR-197-JB-MU-1 (Doc. 37). Just as in this case, fortunately nobody was injured. And through the lens of a longer timeframe, the same consistency rings true. For example, a defendant in the United States District Court for the Eastern District of California was sentenced in May 2024 to 63 months for three counts of arson on federal land after setting a *series of fires* including smaller fires within the footprint of the Dixie Fire, which swept through approximately 1 million acres in mid-2021 and gutted approximately 1,300 structures. He was arrested driving toward a forest fire and a search of his car yielded lighters and electronic devices. *See United States v. Maynard*, Case No. 2:21-CR-00224-DJC-1 (Doc. 84). In that case, 63 months was the agreed upon recommended sentence between the Government and the defendant. *See id*. (Doc. 82).

While the comparisons between Bertothy and these defendants are not exact, this Court can, and should, conclude that the sentence the parties are jointly recommending is not an outlier but is appropriate in cases of this nature.

V.      **Collateral Consequences**

Bertothy faces sentencing for the only criminal conviction of her life. When faced with the possibility of additional incarceration, it is easy to lose sight of the fact that a sentence of five years in federal prison is, by no means, lenient—and that is particularly true given that she has been detained pretrial in a Bureau of Prisons facility very far from her home and her family. Indeed, as recently as 2007, the U.S. Supreme Court rejected the idea that even a sentence of probation is nothing but an overly lenient slap on the wrist. *See Gall v. United States*, 552 U.S. 38, 44 and n.4 (2007) ("Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty...[p]robation is not granted out of a spirit of leniency...probation is not merely 'letting an offender off easily'").

For Bertothy, the shame and humiliation this criminal case has brought to her have been profoundly difficult. In this regard, federal district courts have begun to give more weight to collateral consequences when crafting an appropriate sentence pursuant to Section 3553(a) and Bertothy respectfully brings one important case to this Court's attention: *United States v. Nesbeth*, 188 F.Supp. 3d 179, 2016 WL 3022073 (E.D.N.Y. 2016), *appeal withdrawn* (Sept. 9, 2016).

In *Nesbeth*, the defendant was convicted by a jury "of importation of cocaine and possession of cocaine with intent to distribute. Her advisory guidelines sentencing range was 33-41 months." *Id*. at *1. In thoughtfully rendering a sentence of one year of probation, Judge Block explained:

> Nonetheless, I rendered a non-incarceratory sentence today in part because of a number of statutory and regulatory collateral consequences she will face as a

> convicted felon. I have incorporated those consequences in the balancing of the 18 U.S.C. § 3553(a) factors in imposing a one-year probationary sentence.
>
> I am writing this opinion because from my research and experience over two decades as a district judge, sufficient attention has not been paid at sentencing by me and lawyers—both prosecutors and defense counsel—as well as by the Probation Department in rendering its pre-sentence reports, to the collateral consequences facing a convicted defendant. And I believe that judges should consider such consequences in rendering a lawful sentence.
>
> There is a broad range of collateral consequences that serve no useful function other than to further punish criminal defendants after they have completed their court-imposed sentences. Many—under both federal and state law—attach automatically upon a defendant's conviction.
>
> The effects of these collateral consequences can be devastating. As Professor Michelle Alexander has explained, "[m]yriad laws, rules, and regulations operate to discriminate against ex-offenders and effectively prevent their reintegration into the mainstream society and economy. These restrictions amount to a form of 'civi[l] death' and send the unequivocal message that 'they' are no longer part of 'us.'"

*Id*. (internal footnotes omitted).

In this case, the collateral consequences of Bertothy being a convicted felon will have immediate and long-lasting effects—and that is exacerbated by the fact that attention to this case has gone viral in the media and the court of public opinion. Before she stands before this Court for sentencing, Bertothy has lost meaningful civil rights: the ability to vote in elections in many jurisdictions, not being able to possess a firearm, not being able to secure certain kinds of financial loans, not being eligible to live in certain residences, and the list goes on.

This Court can, and should, take these long-lasting collateral consequences into account when fashioning a sentence sufficient, but no greater than necessary.

### VI.  Conclusion

Against the backdrop of what has transpired and the fact that this case is in the public spotlight, there can be a temptation to sentence Bertothy to a lengthy prison term. And, to be clear,

the parties are jointly recommending a lengthy prison term: 60 months coupled with a substantial restitution order and with an appropriate term of supervised release.

But, as the age-old adage goes, "justice must be tempered with mercy."

Bertothy accepts that she is before this Court for sentencing for a serious crime and that this Court must impose a penalty. That is justice. But Bertothy also appeals to this Court's discretion to temper that justice with mercy. This will be the first term of incarceration this 37-year-old woman ever faces and, as set out in detail in the PSR and in this sentencing memorandum, there are significant mitigating factors warranting a more lenient sentence.

In her 37-year life, Bertothy has struggled with substance abuse and mental health problems, but it is a testament to her strength and character that she is seeking the help she needs and is planning for the future. The jointly requested sentence in this case is the appropriate sentence in this case taking into account all relevant considerations.

For all the reasons set forth in the PSR and in this memorandum, Bertothy respectfully submits that a sentence of 60 months is "sufficient, but not greater than necessary," and that is what the law requires. 18 U.S.C. § 3553(a).

Respectfully submitted,

**Margulis, Gelfand, DiRuzzo & Lambson**

*/s/ Justin K. Gelfand*
JUSTIN K. GELFAND
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
*Admitted *pro hac vice*

-and-

<u>*/s/ Jennie Mariel Espada , Esq.*</u>
USDC-PR 225003
Attorney at Law
PO Box 13811
San Juan, PR 00908

*Counsel for Bertothy*

**<u>Certificate of Service</u>**

      I hereby certify that the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the Office of the United States Attorney.

<u>*/s/ Justin K. Gelfand*</u>
JUSTIN K. GELFAND
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
*Admitted *pro hac vice*

-and-

<u>*/s/ Jennie Mariel Espada , Esq.*</u>
USDC-PR 225003
Attorney at Law
PO Box 13811
San Juan, PR 00908

*Counsel for Bertothy*